UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10118-GAO

MICHAEL A MENTUCK & ASSOCIATES, INC.,
Plaintiff,

v.

LLOYDS UNDERWRITING SYNDICATE #1209, XL LONDON MARKET, LTD., XL CLAIMS SERVICES, and FRANK GAIR MACOMBER CLAIMS AGENCY, INC.,
Defendants.

ORDER
February 28, 2013

O'TOOLE, D.J.

I have reviewed the magistrate judge's Report and Recommendation, the underlying pleadings, motions, and supporting documentation, the plaintiff's objection to the Report and Recommendation, and the defendants' reply to that objection. Having conducted this review, I conclude that the magistrate judge is correct. The Massachusetts statute of frauds applies and bars the action. The plaintiff does not appear to contest the second point, as it concedes in its objection to the report that it "has not alleged the existence of a written contract." (Pl.'s Objections to Report and Recommendation ¶ 4 (dkt. no. 36).) Further, there was no error in the magistrate judge's consideration of the evolution of the language of the complaint through the series of amendments.

Accordingly, I ADOPT the magistrate judge's recommendations for the reasons outlined in the Report and Recommendation. The defendants' Motion (dkt. no. 28) to Dismiss is GRANTED, and the action is DISMISSED.

It is SO ORDERED.

/s/ George A O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL A. MENTUCK & ASSOCIATES, INC.<br><br>Plaintiff,<br><br>v.<br><br>LLOYDS UNDERWRITING SYNDICATE #1209, et al.,<br><br>Defendants. | Civil Action No. 11-10118-GAO |

REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

November 20, 2012

SOROKIN, C.M.J.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants, Lloyds Underwriting Syndicate # 1209 and XL London Market Ltd. (collectively, "the Defendants"), seek dismissal of the Second Amended Complaint filed against them by the plaintiff, Michael A. Mentuck & Associates, Inc. ("Mentuck"). For the reasons that follow, I recommend that the motion (docket # 28) be ALLOWED.

I. BACKGROUND[1]

The claims in this lawsuit arise from efforts to determine the salvage value of frozen seafood damaged in a fire at a freezer facility in Avon, Massachusetts. Doc. No. 25-2 at ¶¶ 4-5,

---

[1] On a motion to dismiss, the Court may consider only the facts alleged in the complaint and any documents "expressly incorporated" into the complaint, or "relie[d] upon [in the complaint and] whose authenticity is not challenged." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

9. The Defendants insured the loss. Id. at ¶ 2. The Defendants, through an agent, hired Mentuck "to engage in salvage work for the specific purpose of determining the salvage value of the [fire-damaged] seafood products." Id. at ¶ 9. Specifically, Mentuck "inspected the damaged seafood products, worked to obtain a good faith offer to purchase said product from bona fide purchasers . . . and engaged in numerous communications with all parties." Id. at ¶ 10. Based on Mentuck's efforts, the Defendants incurred "reduce[d] . . . liability exposure." Id. at ¶ 11.

Mentuck performed these services pursuant to "a contract agreement," or "contracts and/or agreements," that Mentuck would receive "a percentage of the amount by which the salvage value of the seafood product exceeded that originally claimed by [the Defendants' insured]," in exchange for serving as the Defendants' "salvor for the purpose of determining the fair salvage of the distressed product and/or to facilitate the sale thereof." Id. at ¶¶ 12, 15-16. When the Defendants failed to honor these "contracts" or "agreements," Mentuck instituted this action in Massachusetts state court. Id. at ¶ 13.

The original defendant[2] removed the case to this Court in January 2011, Doc. No. 1, then moved to dismiss it based, in part, on the statute of frauds and Mentuck's failure to allege the existence of a written contract, Doc. No. 5; see Doc. No. 6 at 8-11. In response to the motion, Mentuck sought permission to amend its complaint. Doc. No. 16. The defendant objected, again invoking the statute of frauds and arguing any amendment would be futile. Doc. No. 23 at 4-10. The Court permitted the amendment, without prejudice to a renewed motion to dismiss the amended complaint, if appropriate. See Electronic Order dated April 4, 2011. The Amended Complaint did not alter the allegations regarding "contracts" or "agreements" upon which the

---

[2]Mentuck initially sued XL Insurance Company (LTD). Doc. No. 1-3 at ¶ 2.

Defendants' statute of frauds argument relied. Compare Doc. No. 1-3 at ¶¶ 11, 15-18, with Doc. No. 18 at ¶¶ 14, 18-21. Rather, it simply replaced the original defendant with four new defendants, including the two current Defendants.

Thereafter, Mentuck amended its complaint a second time, deleting two defendants but making no other substantive changes. Compare Doc. No. 18 at ¶¶ 2-5, 14, 18-21, with Doc. No. 25-2 at ¶¶ 2-3, 12, 15-18. The Defendants moved to dismiss the Second Amended Complaint, repeating (nearly verbatim) their statute of frauds challenge. Compare Doc. No. 23 at 4-10, with Doc. No. 29 at 5-13. With its opposition brief, Mentuck submitted an affidavit and several other documents. Doc. No. 30-1. After the filing of reply and surreply briefs, Doc. Nos. 32, 33, the matter was referred to the undersigned for a Report and Recommendation, Doc. No. 34.

II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting

Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); accord Maldonado, 568 F.3d at 268.

III. DISCUSSION

A. The Statute of Frauds

Under Massachusetts law, which the parties agree controls this action:

> Any agreement to pay compensation for service as a broker or finder or for service rendered in negotiating . . . the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. For the purpose of this section, the term "negotiating" shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. The provisions of this section shall apply to a contract implied in fact or in law to

4

> pay reasonable compensation but shall not apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity.

Mass. Gen. Laws ch. 259, § 7. The purpose of the statute is clear: "to discourage claims for commission based on conversation which persons heard differently or remembered differently." Alexander v. Berman, 560 N.E.2d 1295, 1298 (Mass. App. Ct. 1990); accord Adelson v. Hananel, No. 04-10357, 2009 WL 5905389, at *5 (D. Mass. Feb. 24, 2009); Cantell v. Hill Holliday Connors Cosmopulos, Inc., 772 N.E.2d 1078, 1081 (Mass. App. Ct. 2002). Massachusetts courts construe the statute of frauds liberally to ensure its legislative purpose is served. See, e.g., Cantell, 772 N.E.2d at 1081; Bay Colony Mktg. Co. v. Fruit Salad, Inc., 672 N.E.2d 987, 989-90 (Mass. App. Ct. 1996).

Because the terms "broker" and "finder" are not defined within the statute, they are "given their ordinary meanings and construed according to their common usage." Cantell, 772 N.E.2d at 1081; accord Backman v. Smirnov, 751 F. Supp. 2d 304, 311 (D. Mass. 2010). A "broker" is "[a]n agent who acts as an intermediary or negotiator, esp[ecially] between prospective buyers and sellers . . . ." Black's Law Dictionary 219 (9th ed. 2009). A "finder" is [a]n intermediary who brings together parties for a business opportunity . . . ." Id. at 707; see also Adelson, 2009 WL 5905389, at *5 (noting Massachusetts courts interpret "finder" to include "one who merely identifies a business opportunity for another") (internal quotation marks omitted). The statute of frauds, however, encompasses more than just brokers and finders. It also extends to "service rendered in negotiating . . . the purchase, sale or exchange of a business [or component elements thereof]." Mass. Gen. Laws ch. 259, § 7 (going on to define

5

"negotiating"); accord Bay Colony, 672 N.E.2d at 989-90.[3]

Based on the allegations set forth in the Second Amended Complaint, Mentuck's role as an "insurance salvag[or]" for the Defendants fell squarely within the bounds of the statute of frauds. Mentuck contends it was hired "for the specific purpose of determining the salvage value" of the damaged seafood, and not to act as a broker, finder, or negotiator in selling the inventory. Doc. No. 25-2 at ¶ 9; Doc. No. 30 at 8. This position is weakened, however, by other allegations included in the Second Amended Complaint (as well as both previous versions of the complaint). For example, Mentuck described its actions on the Defendants' behalf as "work[ing] to obtain *a good faith offer to purchase said product from bona fide purchasers*." Doc. No. 25-2 at ¶ 10 (emphasis added). In addition, Mentuck claims the purpose of its "agreements" with the Defendants was to "determin[e] the fair salvage of the distressed product *and/or to facilitate the sale thereof*." Id. at ¶ 15 (emphasis added).

Although Mentuck claims it was hired "to engage in salvage work" to "determin[e] the salvage value of the seafood products," Doc. No. 25-2 at ¶ 9, that allegation cannot be read in isolation. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14-15 (1st Cir. 2011) (requiring evaluation of "the cumulative effect of the factual allegations"). The Second Amended Complaint, read as a whole, cannot fairly be construed as alleging an agreement pursuant to which Mentuck was hired only to offer an opinion regarding valuation of the inventory, and not to act as a broker or negotiator with potential buyers for the inventory as well. Even if such a reading may have been conceivable when construing the original complaint, it no longer is

---

[3] As such, Mentuck's assertion that "if the Plaintiff was neither a 'broker'[n]or a 'finder' the statute cannot have any application," Doc. No. 33 at 3, is incorrect.

reasonable in light of the fact that Mentuck has amended its pleading twice in the wake of statute of frauds challenges by the Defendants. Such a reading is further undermined by Mentuck's alleged damages, which are stated in the form of a commission. See, e.g., Doc. No. 25-2 at ¶¶ 12, 16 (alleging an agreement to pay Mentuck "a percentage of the amount by which the salvage value . . . exceeded" the insured's claim). Furthermore, Mentuck's specific allegations characterizing the nature of his work show his efforts were aimed at securing, and negotiating with, a potential buyer for the inventory.[4] See id. at ¶¶ 10, 15; see also McIntyre v. United States, 336 F. Supp. 2d 87, 129 n.44 (D. Mass. 2004) (reading complaint as a whole and noting a plaintiff who pleads particulars which favor an affirmative defense might plead itself out of court).

Thus, Mentuck's services, as they are defined in the Second Amended Complaint, "are susceptible of being viewed as those of either a 'broker' or a 'finder' within the ambit of the statute [of frauds]," Cantell, 772 N.E.2d at 1082, and appear to constitute "negotiat[ion of] the purchase, sale or exchange of . . . inventory" as well, Mass. Gen. Laws ch. 259, § 7. The agreement, or agreements, forming the basis of Mentuck's claims allegedly contemplated Mentuck receiving compensation for identifying a prospective buyer of the damaged seafood, "facilitat[ing] the sale" of the seafood, or negotiating terms under which a potential buyer would agree to acquire the seafood so that such terms might be used to establish a salvage value for the damaged inventory. The statue of frauds plainly requires that such agreements be written and signed in order to be enforceable. See Mass. Gen. Laws ch. 259, § 7; see also Cantell, 772

---

[4] This fact is bolstered by the exhibits attached to the affidavit submitted in support of Mentuck's brief, see Doc. No. 30-1, the proper consideration of which is discussed more fully below.

7

N.E.2d at 1082 (finding the statute of frauds requires written commission agreements between prospective employers and companies acting as headhunters, which qualified as "brokers" or "finders" as defined in the statute). The fact that Mentuck did not explicitly invoke the terms "broker," "finder," or "negotiator" does not alter this conclusion. See Doc. No. 30 at 7.

The conclusion that the statute of frauds applies to Mentuck's work as a salvor is "[f]urther fortif[ied]" by the fact that the statute contains "specified exceptions . . . for providers of services, such as attorneys, licensed real estate brokers, and real estate salesmen." Cantell, 772 N.E.2d at 1081; see Mass. Gen. Laws ch. 259, § 7. Where a statute contains enumerated exceptions such as these, there arises a strong "inference that no other exception was intended." LaBranche v. A.J. Lane & Co., 537 N.E.2d 119, 122 (Mass. 1989); accord Cantell, 772 N.E.2d at 1081. Accordingly, Mentuck's claims are grounded in alleged contracts or agreements that are governed by Massachusetts's statute of frauds.[5]

B.  Application to Mentuck's Claims

Having concluded that the statute of fraud applies here, the only question remaining is whether the Mentuck's claims, as they are pleaded, set forth plausible causes of action in light of the statute's requirements. In considering this question, Mentuck's four claims will rise or fall together. See Cantell, 772 N.E.2d at 1082 n.6 (explaining that because the statute of frauds applies to contracts "implied in fact or in law," failure to satisfy the statute is fatal to both breach of contract and quantum meruit claims); id. at 1083 (dismissing a chapter 93A claim that was

---

[5]This conclusion is tied to the specific facts of this case – primarily, the service Mentuck provided and the actions it took in the course thereof – as those facts are alleged in the Second Amended Complaint. It does not follow that *every* salvage agreement by *any* salvor, as a general rule, would fall within the scope of the statute of frauds.

"derivative of . . . breach of contract and quantum meruit claims" which failed to satisfy the statute of frauds); Levenson v. L.M.I. Realty Corp., 575 N.E.2d 370, 372 (Mass. App. Ct. 1991) (finding no implied covenant of good faith and fair dealing where no valid contract existed).

On its face, the Second Amended Complaint neither alleges nor incorporates any written contract between Mentuck and the Defendants or their agents. Mentuck emphasizes, however, that the Second Amended Complaint does not "allege that there was an oral contract," Doc. No. 30 at 7, and claims that its failure to specify that the alleged agreements were written is not grounds for dismissal, Doc. No. 33 at 3. Mentuck further suggests that a writing governing the parties' relationship did exist, in the form of a memorandum attached to an affidavit submitted with Mentuck's opposition brief. See Doc. No. 30 at 8-9; Doc. No. 30-1 at ¶ 9 & Ex. D.

Considering the "context" of this action, and setting aside any "conclusory statements" in the Second Amended Complaint, Mentuck's allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678-79. First, it is axiomatic that a plaintiff wishing to state a breach of contract claim "'must allege, at a minimum, that there was a *valid* contract.'" Backman, 751 F. Supp. 2d at 311 (quoting Guckenberger v. Boston Univ., 957 F. Supp. 306, 316 (D. Mass. 1997)) (emphasis added). Each iteration of Mentuck's complaint has merely, and vaguely, alleged the existence of "contracts and/or agreements" entered "[o]n various days and in various places." See, e.g., Doc. No. 25-2 at ¶ 15. The Defendants have raised the statute of frauds twice before, in response to both the initial complaint and the first amended complaint in this matter. See Doc. No. 6 at 8-11; Doc. No. 23 at 4-10. Despite having notice of this challenge to its claims, Mentuck elected not to supplement its original allegations when composing its Second Amended Complaint to either explicitly aver that

9

a written, signed agreement existed, to identify the date it was formed or the specific terms it contained, or to attach such a document as an exhibit to the pleading. See generally Doc. No. 25-2. Under these circumstances, Mentuck's bare allegations are insufficient to "show[] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see Iqbal, 556 U.S. at 679.

Second, the affidavit and other documents offered by Mentuck in support of its brief cannot salvage his claims. None of the documents were "expressly incorporated," or otherwise referred to, in the Second Amended Complaint. As such, they may not be considered on a motion to dismiss. See Alt. Energy, 267 F.3d at 33; Watterson, 987 F.2d at 3; see also Klein v. MHM Corr. Servs., Inc., No. 08-cv-11814, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010) (factual allegations presented for the first time in opposition to a motion to dismiss must be disregarded). Moreover, Mentuck chose not to avail itself of several earlier opportunities to present additional documents and factual allegations to demonstrate the existence of a written contract – in any of its three versions of the complaint, or in response to either of the two prior briefs in which the Defendants discussed the statute of frauds. The documents offered now are not new, and Mentuck offers no explanation for its failure to submit them previously. See generally Doc. Nos 30, 30-1.

Finally, even if the Court were permitted – and inclined – to consider Mentuck's affidavit and its supporting exhibits, none of the documents would satisfy the statute of frauds and avert dismissal. The only written, signed "agreement" referenced in the affidavit and included in its exhibits is a partially-executed memorandum dated February 17, 2009. See Doc. No. 30-1 at ¶ 9 & Ex. D. The memorandum – signed by Mentuck and the Defendants' adjuster, but not by the Defendants' insured, who owned the damaged inventory – contemplated the insured agreeing to

surrender the inventory to Mentuck, who would sell it, retain a portion of the proceeds to cover expenses and a ten-percent commission, then return the remainder of the proceeds to the insured and/or the Defendants. Id. at Ex. D; see id. at ¶ 9 ("The agreement set my compensation at ten (10) percent of the inventory, *if I took possession and sold it*.") (emphasis added). The terms of the memorandum, however, were not consummated; Mentuck does not allege the insured ever signed it, or that Mentuck ever "took possession and sold" the inventory.

Moreover, the memorandum does not contain any terms of the alleged agreement Mentuck seeks to enforce – an agreement by the Defendants to pay Mentuck "a percentage of the amount by which the salvage value of [the] seafood product exceeded that originally claimed by [the insured]," as a result of the Defendants' use of "the valuation figures obtained by [Mentuck] to reduce . . . the amounts paid . . . under the insurance policy." Doc. No. 25-2 at ¶¶ 11-12; see Christo v. Draper, 771 N.E.2d 229, 2002 WL 1492230, at *1 (Mass. App. Ct. 2002) (rejecting as insufficient a "memorandum omitting an essential term of a contract," and not allowing proof of the term by parol evidence). In support of that "agreement," Mentuck cites only "a custom and practice in the industry." Doc. No. 30-1 at ¶ 10; see Doc. No. 25-2 at ¶ 12. Such "customary" business practices do not serve a substitute for a written agreement under the statute of frauds.[6]

Accordingly, even if the exhibits to Mentuck's brief could be considered, the Second Amended Complaint fails to state a plausible claim entitling Mentuck to relief because it does

---

[6]Although Mentuck's surreply cites Rule 12(d), which permits conversion of a motion to dismiss to a motion for summary judgment, see Doc. No. 33 at 3-4, Mentuck makes no explicit request that the Court so convert the Defendants' motion. In any event, because none of Mentuck's additional documents satisfy the statute of frauds with respect to the agreement alleged in the Second Amended Complaint, there is no reason to convert the Defendants' motion to one for summary judgment and require them to present additional materials. See Fed. R. Civ. P. 12(d).

11

not allege the existence of a valid contract that satisfies the statute of frauds.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Defendants' Motion to Dismiss the Complaint (docket # 28) be ALLOWED.[7]

                                            /s / Leo T. Sorokin
                                            Leo T. Sorokin
                                            Chief United States Magistrate Judge

---

[7] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).